IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

ERIC MENDOZA,

                    Plaintiff,

          v.                              Civil Action No.
                                          9:05-CV-1124 (TJM/DEP)

M. McGINNIS, Superintendent, Southport
  Correctional Facility, *et al.,*

                    Defendants.

───────────────────────────────

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

ERIC MENDOZA, *Pro Se*


FOR DEFENDANTS:

HON. ANDREW M. CUOMO            SENTA B. SIUDA, ESQ.
Office of the Attorney General       Assistant Attorney General
State of New York
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

───────────────────────────────

REPORT AND RECOMMENDATION

     Plaintiff Eric Mendoza, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action
pursuant to 42 U.S.C. § 1983, claiming deprivation of his constitutional
rights.  In his complaint, plaintiff alleges that the defendants were
deliberately indifferent to his serious medical needs by refusing his
repeated requests for proper treatment of back pain, migraine headaches,
ear aches, and a broken tooth, and on one isolated occasion by giving him
the wrong medication, in violation of the Eighth Amendment to the United
States Constitution.  As relief, plaintiff seeks recovery of not less than six
million dollars in damages.

Currently pending before the court is a motion by the defendants
seeking the entry of summary judgment dismissing plaintiff's complaint.  In
their motion defendants assert that as a matter of law the plaintiff cannot
establish that any of his health conditions was sufficiently serious to rise to
a level of constitutional significance, nor does the evidence support a
finding that the defendants were subjectively indifferent to any of his
medical needs.  Based upon a thorough review of the record now before
the court, I find that while some of plaintiff's conditions could potentially be
viewed as sufficiently serious to trigger the protections of the Eighth
Amendment, no reasonable factfinder could conclude that the defendants

were deliberately indifferent to those needs, and therefore recommend that the defendants' motion for summary judgment be granted.

I.   <u>BACKGROUND</u>[1]

Plaintiff is a New York State prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS").  *See generally* Complaint (Dkt. No. 1); *see also* Defendants' Local Rule 7.1(a)(3) statement (Dkt. No. 53-3) ¶ 1.  At the times relevant to his claims plaintiff was designated first to the Southport Correctional Facility ("Southport"), and later the Auburn Correctional Facility ("Auburn"), where he was transferred on November 28, 2003.  Complaint (Dkt. No. 1) ¶¶ 3, 12; Felker Aff. (Dkt. No. 53-3) ¶ 38; *see also* Defendants' Motion (Dkt. No. 53-4) Exh. 1.

On August 2, 2003, during his confinement at Southport, Mendoza slipped and fell upon entering a shower area while handcuffed, injuring his head, shoulder and back.[2,3]  Complaint (Dkt. No. 1) Attachment ¶12;

---

[1]      The following recitation is gleaned from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005); *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  To the extent there is any significant controversy regarding facts material to the claims raised in plaintiff's complaint, they will be noted.

[2]      According to his medical records plaintiff's complaints regarding his back pre-date the shower accident, reaching back at least to June 2, 2003.  Kooi Aff. (Dkt. No. 53-6) ¶ 5.  Magnetic resonance imaging ("MRI") testing of Mendoza's back

3

Felker Aff. (Dkt. No. 53-5) ¶ 4 and Exh. A (Plaintiff's Ambulatory Health Records) 8/2/03 entry.  Following the accident plaintiff was returned to his cell, and later transported to the prison infirmary where he was seen by Nurse Scobble for his injuries.  Complaint (Dkt. No. 1) Attachment ¶ 12; Felker Aff. (Dkt. No. 53-5) ¶ 4.  Nurse Scobble administered Tylenol and, after evaluating the plaintiff, provided him with an ice-pack for his head injury and placed him in the facility's hospital unit for observation. Defendants' Motion (Dkt. No. 53-4) Exh. 2, 21:9-21; Felker Aff. (Dkt. No. 53-5) Exhibit A-1.  After remaining in the hospital unit for approximately two and one half hours, Mendoza was returned back to his cell.[4]  Felker Aff. (Dkt. No. 53-5) Exhibit A-1.

Mendoza alleges that requests made by him on August 4 and 5, 2003

_____

conducted on June 25, 2003 revealed the onset of degenerative disc disease.  *Id.* ¶ 7 and Exh. B, pp. B-3, B-4.  Plaintiff's records further reflect that Mendoza complained of a "sore back" on July 30, 2003, three days before his fall, and at that time was prescribed Ultram for the pain and placed on a list to see a physician.  Felker Aff. (Dkt. No. 53-5) ¶ 5 and Exh. A, 7/30/03 and 7/31/03 Entries.

[3]      While plaintiff now claims to have suffered a broken tooth as a result of the fall, and for purposes of the pending motion that allegation must be credited, plaintiff's medical records make no reference to plaintiff's claim of suffering a broken tooth during the fall, nor do they otherwise substantiate that claim.

[4]      Plaintiff asserts that Nurse Scobble told him a doctor would come to his cell in the afternoon to talk with him, but the doctor never appeared to evaluate him. Complaint (Dkt. No. 1), Attachment ¶ 12.

to be seen by a doctor were ignored.[5]  Complaint (Dkt. No. 1) Attachment

¶12.  On August 6, 2003, after voicing numerous complaints to the floor

officer regarding his continuous pain, Mendoza was visited by Nurse

Whendon.[6]  *Id.*  During that visit the plaintiff complained of experiencing

strong ear pain as a result of his fall in the shower area; defendant

Whendon promised to discuss the matter with a prison physician, and

prescribed Ultram for plaintiff's pain.[7]  *Id.*

On August 15, 2003, plaintiff again complained to corrections staff of

severe pain in his head, back, shoulders, and teeth, after noticing that the

lump on his head was swollen and had become discolored.  Complaint

(Dkt. No. 1) Attachment ¶ 12.  When plaintiff asked to see a doctor, an

---

[5]      There is no entry in the plaintiff's ambulatory health record either
documenting sick-call requests or reflecting any request by Mendoza for medical
services on August 4 or 5, 2003.  Felker Aff. (Dkt. No. 53-5) Exhibit A1-2.

[6]      Plaintiff's health records appear to reflect that he was seen by Nurse
Practitioner Northrup on that date, and that it was August 10, 2003 when he was seen
by Nurse Whendon. Felter Aff. (Dkt. No. 53-5) ¶¶ 7& 9 and Exh. A, 8/6/03 & 8/10/03
Entries.

[7]      While given the current procedural posture plaintiff is entitled to the
benefit of all inferences and the resolution of all ambiguities in his favor, it nonetheless
should be noted that a medical record entry memorializing his discussion with Nurse
Ripley on August 8, 2003 reflects that while Mendoza did complain regarding his ears,
he claimed not to be experiencing any pain, noting that they "just feel funny."  Felker
Aff. (Dkt. No. 53-5) Exh. A, 8/8/03 Entry.  Plaintiff's medical records entry from the
August 6, 2003 visit, which fail to make reference to complaints of ear pain, confirm
that Ultram was prescribed on that date, presumably to address the complaints of back
pain lodged during that visit.  *Id.*, 8/6/03 Entry.

unidentified corrections sergeant responded that because plaintiff did not

appear to be experiencing an emergency situation, he would have to wait

until sick-call the next day.  *Id.*  On the morning of August 16, 2003, after

continuing to experience serious pain, plaintiff was seen by Nurse P. Mills,

but was not permitted to see a physician.[8]  *Id.*  Noting that the Ultram

which had been prescribed was not working and that plaintiff was also

experiencing ear pain, Nurse Mills reported on the medical record entry

from that session that plaintiff "needs ear check", discontinued Ultram, and

instead prescribed Naprosyn.  Felker Decl. (Dkt. No. 53-5) Exh. 1, 8/16/03

Entry.

A central theme of plaintiff's complaint appears to relate to prison

officials' failure to honor his requests to be seen by a prison doctor.  In

addition to those requests previously discussed, plaintiff's complaint

alleges that he requested access to a prison physician on August 15, 16,

23, and 29, 2003, as well as September 2, 4, 11, 16, 18, and 19, 2003.

From the time of the accident on August 3, 2003 until his transfer out of

_____

[8]      While plaintiff's complaint affixes the date of that visit at August 15, 2003,
and refers to the medical official who examined him on that date as Nurse Miller, it is
apparent from the chronology set forth in that complaint, corroborated by an entry from
August 16, 2003 in plaintiff's ambulatory health records, that the visit actually occurred
on the latter date, and that the nurse's name is Mills.

Southport on November 24, 2003, Mendoza was not seen by a doctor. *Id.*

Complaint (Dkt. No. 1) Attachment ¶ 12.  Plaintiff's medical records also

reveal, however, that between the time of his injury on August 2, 2003,

and the date of his transfer out of Southport on November 28, 2003,

plaintiff was seen on twenty-five different occasions by seven different

registered nurses and one nurse practitioner ("NP"), and completed six

physical therapy sessions.  Felker Aff. (Dkt. No. 53-5) ¶¶ 4, 7-9, 11-25, 27-

30, 32-37.  Those records also reflect considerable efforts on the part of

prison medical staff to address plaintiff's back condition, including through

the use of physical therapy, pain medication, and a combination of other

strategies which included a "front cuff order". *Id.*

    Plaintiff's ear condition was also addressed during many of his visits

with medical personnel at Southport.  On August 27, 2003 NP Northrup,

upon checking plaintiff's ears, determined that they were both filled with

wax and prescribed Debrox drops to address that condition. *Id.* ¶ 15 and

Exh. A, 8/27/03 Entry.  Plaintiff was seen on August 28, 2003 by Nurse

Scobble, again complaining of ongoing ear discomfort. *Id.* ¶ 16.  Nurse

Scobble similarly observed a wax build-up in both ear canals, and again

ordered that plaintiff be provided with Debrox drops to alleviate the

condition.  *Id.* and 8/28/03 Entry.

Despite several intervening visits with prison medical personnel, the next reference in plaintiff's health records to his ear condition is contained in a note of a visit on September 24, 2003 with Nurse Preiser, who wrote that plaintiff was complaining of left ear pain and stating that his left ear made a "buzzing" sound.  *Id.* ¶ 29 and 9/24/03 Entry.  After being placed on an NP call-out, plaintiff was seen by NP Northrup on that same date; based upon her examination, NP Northrup determined that plaintiff was experiencing a left eustachian tube dysfunction/allergies and prescribed Allegra D to address the condition.  *Id.* ¶ 30 and 9/24/03 Entry.  After requesting a refill of the Allegra D on October 13, 2003, plaintiff was seen by Nurse Whendon on October 27, 2003 with residual complaints of left ear pain and an inability to hear.  *Id.* ¶¶ 31, 32 and Exh. A, 10/13/03 and 10/27/03 Entries.  On that occasion, an ear check was ordered.  *Id.*

Plaintiff again presented to medical staff at Southport on several subsequent occasions, including November 2, 2003, November 17, 2003, November 23, 2003 and November 24, 2003, complaining of on-going ear pain.  *Id.* ¶¶ 33-36.  Plaintiff was prescribed Tylenol following the November 23, 2003 visit, and an ear check was recommended.  *Id.*

8

On November 24, 2003 Nurse Ripley examined plaintiff's left ear. Felker Aff. (Dkt. No. 53-5) ¶ 37 and Exh. A, 11/25/03 Entry.  Determining that the ear canal was red and inflamed and discovering fluid behind the tympanic membrane, Nurse Ripley referred the plaintiff to NP Northrup and ordered a prescription for Amoxicillin.  *Id.*

While his complaint is lacking in specifics on this score, plaintiff maintains that the deficiencies in his medical care continued following his transfer into Auburn on November 25, 2003.  Complaint (Dkt. No. 1) Attachment ¶ 12.  Plaintiff's medical records, however, reflect a similarly intensive regimen of treatment of the plaintiff by medical personnel at Auburn.  Those records show that upon his entry into Auburn Mendoza was examined by Patty Hefrun, RN, who noted prior diagnoses of degenerative disc disease, disc protrusion based upon the June 25, 2003 MRI testing and a recent history of ear pain, and referred plaintiff's records to a physician for review and determination of appropriate medications. Kooi Aff. (Dkt. No. 53-6) ¶ 16 and Exh. A, 11/28/03 Entry.  Thereafter, plaintiff was seen by prison medical personnel on a regular basis, and his back and ear conditions were the subject of many of those visits.  *Id.* ¶¶ 17-78. Plaintiff's medical records also reveal that the last complaint

9

registered by plaintiff concerning ear pain came on April 13, 2004, and

that on May 17, 2004 he was found by a audiologist to have functional

hearing.  *Id.* ¶¶ 77 and Exh. B, p. B-22.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on September 7, 2005, and was

thereafter granted leave to proceed *in forma pauperis*.[9]  Dkt. Nos. 1, 6.

Plaintiff's complaint alleges defendants' deliberate indifference to his

medical needs, both initially at Southport and later at Auburn.  *See*

*generally* Complaint (Dkt. No. 1).  Named as the defendants in plaintiff's

complaint are M. McGinnis, the Superintendent at Southport; J. Burge, the

Superintendent of Auburn; Dr. Kooi, a prison doctor at Auburn; and J.

Scobble, T. Whendon, Preiser, B. Brandt, P. Miller, and P. Nelson, all of

whom are alleged to be registered nurses employed by the DOCS at

---

[9]      Since plaintiff's complaint asserts claims based upon occurrences at both
the Southport Correctional Facility, which is situated in the Western District of New
York, and at Auburn, located in this district, venue properly lies in the Northern District
of New York.  *See* 28 U.S.C. § 1391(b) (indicating that "[a] civil action wherein
jurisdiction is not founded solely on diversity of citizenship may, except as otherwise
provided by law, [may] be brought only in (1) a judicial district where any defendant
resides, if all defendants reside in the same State [or] (2) a judicial district in which a
substantial part of the events or omissions giving rise to the claim occurred . . . ").

Southport.[10]  Dkt. No. 1.

In April of 2007, Mendoza sought leave to file a second amended complaint, see Dkt. No. 42, attempting to join six additional defendants in the action.[11]  Dkt. No. 42.  Plaintiff's proposed second amended complaint also purported to rename as defendants the individuals previously dismissed from the action, including T. Whendon, Preiser and P. Miller. Plaintiff's motion to file a second amended complaint, which was opposed by the defendants, *see* Dkt. No. 44, was denied by the court on July 20, 2007.  Dkt. No. 48.

On January 15, 2008, defendants M. McGinnis, J. Burge, Dr. Kooi, J. Scobble, and B. Brandt, moved seeking the entry of summary judgment dismissing plaintiff's complaint.  Dkt. No. 53.  In their motion, the defendants argue that the plaintiff has not properly served two defendants, cannot prove certain defendants' personal involvement in the

---

[10]     On March 14, 2006, in response to defendants' filing of a pre-answer motion seeking the dismissal of the plaintiff's complaint, Senior Judge Thomas J. McAvoy ordered dismissal of plaintiff's claims, without prejudice, against defendants J. Scobble, T. Whendon, Preiser and P. Miller for failure to effect timely service of process.  Dkt. No. 37.  Despite that ruling, defendant J. Scobble nonetheless remains a defendant since although not reflected in the court's records, she was in fact served in the action.

[11]     An earlier effort by the plaintiff to amend his complaint without court leave was rejected.  *See* Dkt. Nos. 8, 10.

11

constitutional violations asserted, and has failed to establish that they

were deliberately indifferent to any serious medical need.  *Id.*  That

motion, which plaintiff has opposed, *see* Dkt. No. 55, is now ripe for

determination and has been referred to me for the issuance of a report

and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c).[12]  *See also* Fed. R. Civ. P. 72(b).

## III.   DISCUSSION

### A.   Failure To Serve

In their motion, defendants initially seek dismissal of plaintiff's claims

against two unserved defendants, including a John Doe defendant

identified in plaintiff's amended complaint only as a corrections sergeant at

Southport, and Nurse P. Nelson.   In support of their motion defendants

---

[12]      In his opposition to defendants' summary judgment motion, plaintiff
appears to expand his claim considerably to now challenge the propriety of the DOCS
practice of escorting prisoners to showers with their hands restrained behind their
backs and also to implicate Corrections Officer Bennett, who accompanied him to the
shower area, as having culpability in the matter.  See Plaintiff's Memorandum (Dkt. No.
55-3) p. 7.  This claim, however, is nowhere contained in plaintiff's complaint, nor is
C.O. Bennett named as a defendant in the case.  Plaintiff cannot properly now, at the
summary judgment stage, interject additional legal arguments or new defendants into
the action.  *See McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 697-68
(S.D.N.Y. 1999) (noting that it is inappropriate to raise new claims for first time in
opposition to summary judgment); *Carribean Wholesales & Serv. Corp. v. U.S. JVC
Corp.,* 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997) (asserting that a motion for summary
judgment is not the appropriate place to present new claims); *Harvey v. New York City
Police Dep't,* No. 93 Civ. 7563, 1997 WL 292112, at *2 (S.D.N.Y. June 3, 1997)
(same).

correctly note at this procedural juncture in the case any named but unserved defendants, particularly those Doe defendants whose identities have not yet been ascertained, are entitled to dismissal, although without prejudice, in light of the fact that jurisdiction over them is lacking. *See* Fed. R. Civ. P. 4(m).

In this instance, however, defendants' motion is unnecessary. While both sergeant John Doe and Nurse P. Nelson are specifically mentioned by those designations in plaintiff's complaint, and Nurse P. Nelson appears to be specifically identified in the body of that pleading as a "defendant.", *see* Complaint (Dkt. No. 1) Attachment ¶ 12, neither is listed as a defendant in either the caption or the two locations within the complaint where the parties are described. *See id.* § 3 and Attachment ¶¶ 3-11. Since neither Sergeant John Doe nor Nurse P. Nelson appears to have been intended by Mendoza to be named as a defendant in the case, and neither has been served with process or voluntarily intervened in the action, I recommend this portion of defendants' motion be denied as moot.

B.    Summary Judgement Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted

when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood

14

nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to

15

the verdict").

C.   Personal Involvement

In their motion the defendants challenge the sufficiency of plaintiff's allegations regarding the personal involvement of Superintendents McGinnis and Burge, and as well as of Nurse Brandt, arguing that the allegations against those defendants are wholly conclusory and lack specifics connecting them to any constitutional violation alleged in his complaint.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

1.   Nurse B. Brandt

Plaintiff's complaint fails to elaborate upon Nurse Brandt's role in his

16

medical care at Southport, and in particular the manner in which she was deliberately indifferent to his serious medical needs.  The sole mention of that defendant's name in the body of plaintiff's complaint is in a passage in which he alleges, in wholly conclusory fashion and without supporting details, that she and others at Southport and Auburn were deliberately indifferent to his health by failing to provide adequate medical care, and additionally that they "intentionally failed to administer proper medication and refused to fulfill any of [his] requests for proper follow up care." Complaint (Dkt. No. 1) Attachment ¶ 13.

In the face of defendants' summary judgment motion, in which they assert the insufficiency of his allegations against Nurse Brandt, Mendoza fails to offer any evidence which would implicate her personal involvement in the deliberate indifference claimed.  During his deposition Mendoza was asked to describe Nurse Brandt's involvement in his treatment. Defendants' Motion (Dkt. No. 53-4) Exh. 1 at 53:22-54-2.  In response, plaintiff alleged that he spoke with Nurse Brandt complaining of an ear infection on one occasion, at which time she prescribed Antavera, but on that one occasion she would not grant his request to be seen by a prison

17

physician.[13] *Id.*  This allegation is insufficient to establish Nurse Brandt's

role in the medical indifference alleged.  *See Schwartz v. Dennison*, 518

F. Supp. 2d 560, 573 n.11 (S.D.N.Y.2007) (Plaintiff's complaint contained

no allegations from which it can be inferred that defendants created, or

allowed to continue, an unconstitutional policy); *Graham v. Poole*, 476 F.

Supp.2d 257, 261 (W.D.N.Y.2007) ("Plaintiff's conclusory allegation that

Poole failed to provide him with adequate medical care is also insufficient

to state a claim.").  Accordingly, I recommend that this portion of

defendants' motion be granted.

### 2.    Superintendents McGinnis and Burge

Defendants also argue that plaintiff's complaint is devoid of

allegations of any personal involvement, or even awareness, on the part of

the superintendents at Southport and Auburn regarding the medical

treatment which he was receiving at those facilities.  Accordingly,

defendants assert, it therefore appears that they are being sued by

plaintiff solely by virtue of their positions as facility superintendents.

A supervisor cannot be liable for damages under section 1983 solely

---

[13]    There is no reference in plaintiff's health records to the drug "Antavera". According to the plaintiff's ambulatory health record, his ear infection was treated with Debrox (ear drops), Amoxicillin, and Allegra D. Felker Affidavit (Dkt. No. 53-5) ¶¶ 16, 30, 37.

by virtue of being a supervisor – there is no *respondeat superior* liability

under section 1983. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.

2003); *Wright*, 21 F.3d at 501. A supervisory official can, however, be

liable in one of several ways: 1) the supervisor may have directly

participated in the challenged conduct; 2) the supervisor, after learning of

the violation through a report or appeal, may have failed to remedy the

wrong; 3) the supervisor may have created or allowed to continue a policy

or custom under which unconstitutional practices occurred; 4) the

supervisor may have been grossly negligent in managing the subordinates

who caused the unlawful event; or 5) the supervisor may have failed to act

on information indicating that unconstitutional acts were occurring. *Iqbal*

*v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007); *see also Richardson*, 347

F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-

24 (2d Cir. 1986). *Richardson*, 347 F.3d at 435 ("[M]ere 'linkage in the

prison chain of command' is insufficient to implicate a state commissioner

of corrections or a prison superintendent in a § 1983 claim.") (citations

omitted); *see also*, *e.g.*, *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987)

(dismissal appropriate where plaintiff does no more than allege that

defendant was in charge of prison); *Ayers v. Coughlin*, 780 F.2d 205, 210

19

(2d Cir. 1985) (same).

In his response to defendants' motion plaintiff asserts that his claims against Southport Superintendent McGinnis are tied to his position as having responsibility "for training and over all management of [the] facility", and his contention that accordingly, "he is liable for all deficiencies in his staffs [sic] performance of their official duties of care, custody and control."[14]  Plaintiff's Memorandum (Dkt. No. 55-3) at 9.  While under other circumstances liability on the part of a supervisor can be imputed based upon the acts of subordinate employees, it is well-established that there is no *respondeat superior* liability under section 1983.  *See Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501.  Similarly, it is also true that a supervisor can under certain circumstances be held accountable for their gross negligence in managing subordinates, or for knowingly tolerating the existence of a policy or custom giving rise to unconstitutional practices, plaintiff has identified no specifics to support such a claim, instead merely making conclusory, unsupported allegations which are simply insufficient to establish liability.[15]  *See Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d

---

[14]     Plaintiff's response does not provide any indication as to the basis for his claims against Auburn Superintendent Burge.

[15]     Indeed, in opposition to defendants' motion plaintiff has not even offered any information to indicate the extent, if any, of the supervising responsibilities of a

501, 513 (S.D.N.Y. 2008) (indicating that plaintiff must allege specific facts of personal involvement to survive summary judgement); *see also Iqbal v. Hasty*, 490 F.3d at 152-53; *Colon v. Coughlin*, 58 F.3d 865, 873-74 (2d Cir. 1995).

Having carefully reviewed the record in this case I find that plaintiff's claims against those two individuals are predicated exclusively upon their supervisory positions, a conclusion which is buttressed by testimony given during Mendoza's deposition.  During his deposition plaintiff asserted that he was suing Southport Superintendent McGinnis not because of any specific denial in medical treatment, but instead because he was the person in charge of the facility.  Defendants' Motion (Dkt. No. 53-4) Exh. 2 at 50:8-20.  Similarly, plaintiff testified that he was suing Auburn Superintendent Burge because he "is in charge of [the] facility and he had to believe that everything was going straight."  *Id.* at 53:22-54-2.

In order to defeat the portion of defendants' motion for summary judgment asserting lack of personal involvement, it was incumbent upon plaintiff to present evidence to support an inference that the three defendants implicated in that motion had personal involvement in any

_____

prison superintendent, presumably with little or no medical training, upon medical staff at the prison facility overseen by him or her.

deliberate indifference to his medical care.  In light of his failure to do so, and reliance instead upon mere conclusory allegations regarding their liability, I recommend a finding that defendants Brandt, McGinnis and Burge are entitled to dismissal based upon lack of personal involvement and recommend the entry of an order granting that portion of defendants' summary judgment motion.  *See Kia P. v. McIntyre*, 235 F.3d 749, 763 (2d Cir. 2000) ("A plaintiff may not survive a properly asserted motion for summary judgment on the basis of conclusory allegations alone."); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998); *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985) ("[M]ere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion.").

D.    <u>Deliberate Medical Indifference</u>

The centerpiece of defendants' motion is their contention that after surveying the evidence contained in the record the court can only conclude that no reasonable factfinder could find that they were deliberately indifferent to plaintiff's serious medical needs.  In their motion, defendants argue both that plaintiff has failed to prove the existence of a serious medical need of constitutional proportions, and that in any event

the record belies any claim that they were deliberately indifferent to any such need.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S. Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle*). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference." *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546

(N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S.

Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at

*2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also,*

*generally, Wilson*, 501 U.S. 294, 111 S. Ct. 2321.  Deliberate indifference

exists if an official "knows of and disregards an excessive risk to inmate

health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.

Ct. at 1978; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998

WL 713809, at *2 (same).

    In order to state a medical indifference claim under the Eighth

Amendment, a plaintiff must allege a deprivation involving a medical need

which is, in objective terms, "'sufficiently serious'".  *Hathaway v. Coughlin*,

37 F.3d 63, 66 (2d Cir. 1994) (citing *Wilson*, 501 U.S. at 298, 111 S. Ct. at

2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S.

Ct. 1108 (1995).  A medical need is serious for constitutional purposes if it

presents "'a condition of urgency' that may result in 'degeneration' or

'extreme pain'." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)

(citations omitted).  A serious medical need can also exist where "'failure

to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'"; since medical conditions vary in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts*. Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*).  Relevant factors in making this determination include injury that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or causes "'chronic and substantial pain.'"  *Chance*, 43 F.3d at 701 (citation omitted); *LaFave v. Clinton County*, No. CIV. 9:00CV774, 2002 WL 31309244, at *2-*3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.).

Deliberate indifference, in a constitutional sense, exists if an official knows of and disregards an excessive risk to inmate health or safety; the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

    1.    <u>Serious Medical Need</u>

a)      Broken Tooth

Among plaintiff's medical complaints are those surrounding

defendants' alleged failure to treat a broken tooth which, although not

referenced in any of the medical reports following that incident, is alleged

to have occurred during the course of the shower incident on August 2,

2003.  While in the memorandum in support of their summary judgment

motion defendants devote no attention to plaintiff's broken tooth, they

seemingly argue that it does not constitute a serious medical need.

Under certain circumstances a dental condition can constitute a

serious medical need.  *See Bennett v. Erie County Holding Ctr. Med.*

*Dep't),* No. 03-CV-6393P, 2006 WL 897817, at *6 (W.D.N.Y. Mar. 31,

2006) (holding that dental infection over nine month period constituted

serious medical need); *see also Harrison v. Barkley,* 219 F.3d 132, 137

(2d Cir.2000) ("[B]ecause a tooth cavity will degenerate with increasingly

serious implications if neglected over sufficient time, it presents a 'serious

medical need' within the meaning of our case law.").  Dental conditions,

like all medical conditions, can vary in severity and, if left untreated, can

support an Eighth Amendment claim depending on the specific facts of the

case.  *See Chance,* 143 F. 3d at 703 ("[A] cognizable claim regarding

26

inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff . . . ."); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (three-week delay in dental treatment aggravated problem); *Fields v. Gander,* 734 F.2d 1313, 1314-15 (8th Cir. 1984) ("severe pain" due to infected tooth); *cf. Dean v. Coughlin*, 623 F. Supp. 392, 404 (S.D.N.Y. 1985) (holding "dental needs – for fillings, crowns, and the like – are serious medical needs as the law defines that term").  Thus, for example, a tooth cavity has been held to constitute a degenerative condition in light of the fact that, if left untreated indefinitely "it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction."  *Harrison,* 219 F.3d at 137 (citation omitted).

In this instance, by contrast, plaintiff asserts the existence of a broken tooth, and does not allege either that it has caused him to experience extreme pain or the likelihood, that if left untreated, his broken would have resulted in degeneration.  Indeed, during his deposition Mendoza testified that the pain associated with his broken tooth diminished after medication was prescribed, and that when he complained to a prison nurse regarding the tooth she made an appointment with a dentist who, after determining

27

that it could not be saved, extracted it without causing additional pain.

Defendants' Motion (Dkt. No. 53-4) Exh. 1 at 59:5-60:9.  Accordingly, I

recommend a finding that no reasonable factfinder could conclude that

plaintiff's broken tooth represents a medical condition of constitutional

significance.  *See Chance*, 143 F.3d at 703 (indicating that the factors to

consider in determining if dental problems raise to the level of

constitutional significance are whether plaintiff suffers from severe pain,

deterioration of teeth, or inability to engage in normal activities) (internal

citations omitted).

b)  <u>Back Pain and Migraine Headaches</u>

While noting a conflict among the various court decisions which

address the issue, defendants argue that Mendoza's back condition does

not rise to a level sufficient to trigger the protections of the Eighth

Amendment.[16]  The question of whether chronic back pain can rise to a

---

[16]      In presenting this argument, defendants fail to address plaintiff's migraine headaches, which can also constitute a serious medical need.  *Moriarity v. Neubold*, No. 02-CV-1662, 2004 WL 288807, at *2 n.2 (D. Conn. Feb. 10, 2004) (suggesting plaintiff's migraine headaches constituted a serious medical need warranting Eighth Amendment protection since they can be "extremely painful and debilitating"); *O'Bryan v. Sedgwick County*, No. 98-3308, 2000 WL 882516, at *5 (D.Kan. June 12, 2000) (assuming plaintiff's migraine headaches, for which he was prescribed medication, was a serious medical need under the Eighth Amendment; *but see Rodriguez v. Mercato*, No. 00 Civ. 8588, 2002 WL 1997885, and *2-3, 8 (S.D.N.Y. Aug, 28, 2002) (migraines and back pain not "sufficiently serious" to implicate the Eighth Amendment)

level of constitutional significance is dependent upon the circumstances of the particular case presented.  In this instance, given plaintiff's diagnosed condition of degenerative disc disease, and resolving all ambiguities in plaintiff's favor, I conclude that a reasonable factfinder could find that the condition constitutes a serious medical need.  *See Guarneri v. Hazzard,* No. 06-CV-0985, 2008 WL 552872, at * 6 (N.D.N.Y. Feb. 27, 2008) ("[s]evere back pain, especially if lasting an extended period of time, can amount to a 'serious medical need' under the Eighth Amendment.") (citing *Nelson v. Rodas*, No. 01-CV-7887, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002)); *Faraday v. Lantz*, No. 03-CV-1520, 2005 WL 3465846, at *5 (D. Conn. Dec 12, 2005) (holding that  persistent complaints of "lower back pain caused by herniated, migrated discs [and] sciatica..." leading to severe pain constitutes a serious medical need.).

c)   <u>Ear Pain</u>

As is true of back pain, the cases addressing the issue of whether an ear condition, including an infection, may constitute a serious medical need for purposes of the Eighth Amendment are similarly equivocal and fact-specific.  *Compare Duffield v. Jackson*, No. CIV-07-90-R, 2007 WL 4210863, at *13 (W.D. Okla. Nov. 27, 2007) (assuming that the plaintiff's

29

ear infection, and ear pain was a sufficiently serious condition under the Eighth Amendment); *Golden v. Berge*, No. 03-C-0403, 2003 WL 23221483, at *6 (W.D. Wis. Sept. 25, 2003) (finding that plaintiff's allegation that he suffered severe pain in his ear as a result of an ear infection was sufficient to suggest that he had a serious medical need) *with Feazell v. Augusta County Jail,* 401 F. Supp. 405, 407 (D.Va. 1975) (ear infection found not to constitute a serious medical need for constitutional purposes).  Given this conflict, and resolving all ambiguities in plaintiff's favor, I am unable to conclude, as defendants argue, that plaintiff's ear pain did not constitute a serious medical need.

####     2.    Deliberate Indifference

Even assuming that any of plaintiff's medical conditions arises to the level of a serious medical need, the record nonetheless is devoid of evidence from which a reasonable factfinder could conclude that defendants were indifferent to that need.  A review of plaintiff's medical records from both Southport and Auburn, which are comprehensive, fail to substantiate plaintiff's claim that his complaints were ignored and medical treatment was withheld.  Instead, those records reveal at times intense regimens of testing, prescription of medication, use of physical therapy,

and other strategies employed by prison medical officials in an effort to address plaintiff's conditions.  The records also show that during the relevant periods he was seen frequently by medical staff at Southport and Auburn.  Particularly given the extent of efforts on the part of medical personnel at those facilities plaintiff's allegations, even when liberally construed, fall far short of demonstrating indifference by prison officials to his medical needs.

Plaintiff's quarrel with the medical treatment received at Southport appears to center upon his disagreement with chosen courses of treatment and the refusal of prison nurses and nurse practitioners to honor his request to be seen by a prison physician.  Unfortunately for the plaintiff, mere disagreement by a prison inmate with a prescribed course of treatment does not provide a basis to find a violation of inmate's rights under the Eighth Amendment.  *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040, 113 S. Ct. 828 (1992).  Determinations made by medical providers within their discretion are given a "presumption of correctness" when it concerns the care and safety of patients.  *Perez v. County of Westchester*, 83 F. Supp.

31

2d 435, 440 (S.D.N.Y. 2000) (citing *Kulak v. City of New York*, 88 F.3d 63, 77 (2d Cir. 1996)).  As for plaintiff's claims that he should have been permitted to see a doctor at his insistence, it should be noted that the Eighth Amendment, while prohibiting cruel and unusual punishment, does not guarantee a prison inmate unfettered access, at his or her insistence, to a prison physician.  *See Wandell v. Koenigsmann*, No. Civ.A. 99-8652, 2000 WL 1036030, at *3 (S.D.N.Y. July 27, 2000) (indicating that as long as the medical care provided was adequate, there is no Eighth Amendment violation); *Church v. Hegstrom*, 416 F.2d 449, 450-51 (2d Cir. 1969) (maintaining that medical professionals have wide discretion in treating prisoners, and section 1983 was not designed to permit the federal courts to sit as the final arbiter of the ordinary medical practices of state prisons).  In this instance the record reflects that plaintiff was seen at appropriate intervals by medical personnel at Southport, and that those personnel, utilizing their discretion, determined whether it was necessary for the plaintiff to be seen by a physician.  Accordingly, the record yields no evidence from which a factfinder could conclude that medical officials at Southport were deliberately indifferent to plaintiff's medical needs.

Turning to his period of incarceration at Auburn, Mendoza asserts that while there, Dr. Kooi treated him in a "poor manner" and he was

unhappy with Dr. Kooi's conservative course of treatment. Defendants'

Motion (Dkt. No. 53-4) Exhibit 1, 54:3-7. Plaintiff also disagreed with the

reduced level of pain medication prescribed for him by Dr. Kooi. *Id.* at

45:13-46:17. The records reveal that Dr. Kooi examined the plaintiff on

eleven separate occasions over a sixteen month period, and additionally

referred him to an audiologist, a neurologist, and a physical therapist, and

requested repeat MRI testing of plaintiff's back. Kooi Aff. (Dkt. No. 53-6)

¶¶ 21, 24, 29, 33, 34, 39, 45, 50, 54, 56, 59, 65, 67. In addition, Dr. Kooi

prescribed for the plaintiff a range of different pain and anti-inflammatory

medications in order to find which medications provided him the most

relief for his conditions, and continued to monitor his progress at regular

intervals.

The question of what diagnostic techniques and treatments should

be administered to an inmate is a "classic example of a matter for medical

judgment"; accordingly, prison medical personnel are vested with broad

discretion to determine what method of care and treatment to provide to

their patients. *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143

F.3d at 703; *Rosales v. Coughlin*, 10 F. Supp. 2d 261, 264 (W.D.N.Y.

1998). Moreover, plaintiff's disagreement over the level of pain

medication, without more, is insufficient to avoid dismissal of the plaintiff's

claim; "[r]ather, to prevail on a claim involving choices between alternative

course of treatment, a prisoner must show that the chosen course of

treatment 'was medically unacceptable under the circumstances,' and was

chosen 'in conscious disregard of an excessive risk to [the prisoner's]

health.'" *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (citing

and quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Based upon the foregoing, I find that no reasonable factfinder could

conclude that any of the remaining defendants named in plaintiff's

complaint were deliberately indifferent to plaintiff's serious medical

needs.[17]

IV.   SUMMARY AND RECOMMENDATION

A thorough review of the comprehensive record now before the court

---

[17]     Among plaintiff's complaints is a claim that on or about October 20, 2003
he was administered medication meant for another inmate.  Complaint (Dkt. No. 1)
Attachment ¶ 12.  Because plaintiff has not elaborated regarding the incident, either in
his complaint or in his responsive motion papers, and fails to identify the nurse
involved, nor does he offer any evidence to indicate that the incident was the result of
an intentional act, it appears that at best the matter involves a mistake or negligence
which would not suffice to support an Eighth Amendment claim. *See Hudson v. Clark,*
319 F. Supp. 2d 347, 352 (W.D.N.Y. 2004); *see also Daniels v. Williams,* 474 U.S.
327, 330-31, 106 S. Ct. 662, 664-65 (1986) (stating that mere negligence on the part
of state officials is not actionable under section 1983 and does not work a
constitutional deprivation by itself).

fails to disclose evidence from which a reasonable factfinder could

conclude that defendants McGinnis, Burge, and Brandt were personally

involved in the constitutional deprivations allegedly experienced by the

plaintiff.  Additionally, the record is lacking in evidence from which a

reasonable factfinder could conclude that defendants Nurse Scobble and

Dr. Kooi were deliberately indifferent to plaintiff's serious medical need.

Accordingly, it is hereby

RECOMMENDED, that defendants' motion for summary judgment

dismissing plaintiff's complaint (Dkt. No. 53) be GRANTED, and that

plaintiff's complaint be DISMISSED in its entirety.

NOTICE:  pursuant to 28 U.S.C. § 636(b)(1), the parties have ten

(10) days within which to file written objections to the foregoing report-

recommendation.  Any objections shall be filed with the clerk of the court.

FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL

PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of

this report and recommendation upon the parties in accordance with this

court's local rules.

Dated:      July 24, 2008
            Syracuse, NY


_____
            David E. Peebles
            U.S. Magistrate Judge